**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| AEROSOFT GMBH,<br><br>Plaintiff,<br><br>v.<br><br>DOES 1 – 50,<br><br>Defendants. | Case No. 1:12-cv-21489-PAS |

**JOHN DOE 17'S MOTION TO SEVER & DISMISS DEFENDANTS JOHN DOES 2-50, QUASH THE SUBPOENA, AND/OR ISSUE A PROTECTIVE ORDER PREVENTING THE DISCLOSURE OF JOHN DOE 17'S PERSONALLY IDENTIFYING INFORMATION, AND INCORPORATED MEMORANDUM OF LAW**

Comes now, John Doe 17 identified by the IP address 68.59.131.101, by and through undersigned counsel, and files this Motion and moves this Court to: sever and dismiss Defendants John Does 2-50, quash the subpoena directed at the Internet Service Provider ("ISP") Comcast Cable Communications Holdings, Inc. ("Comcast") and/or issue a protective order in connection with the subpoena directed at Comcast, and objects to the discovery sought. This Court should grant the relief requested. In support, Defendant relies on the following Memorandum of Law:

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff, Aerosoft GMBH, is a German corporation and neither alleges nor appears to transact business in or have any identifiable connections to Florida. (Complaint [Doc. No. 1] ¶ 5.) Plaintiff claims to be the exclusive copyright holder of the video game titled *Airbus X* (the "Work"). (*See id.* ¶ 10.)

Plaintiff alleges that 50 John Doe Internet subscribers are liable for the infringement and contributory infringement of Plaintiff's copyright in the Work. (*See generally id.*) Plaintiff identifies user IP addresses, numbers assigned by an Internet Service Provider (ISP) to each subscriber, to identify these John Does. On or about May 3, 2012, Plaintiff filed an *ex parte* Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference ("Motion for Expedited Discovery") seeking leave from this Court to issue subpoenas directed at each John Doe's ISP seeking their personally identifying information. (*See* Motion for Expedited Discovery [Doc. No. 4].) The Court granted Plaintiff's *ex parte* Motion for Expedited Discovery on or about May 16, 2012. *See* Order [Doc. No. 6].)

Plaintiff then caused a subpoena directed at Comcast Cable Communications Holdings, Inc. ("Comcast") to be issued from the United States District Court for the Southern District of Florida seeking the personally identifying information (the names, addresses, and Media Access Control addresses) of John Doe 17 and other John Doe Defendants (the "Subpoena"). (*See* Subpoena, attached hereto as Exhibit A.)

## II. ARGUMENT

### A. <u>John Doe Defendants 2-50 Should be Severed and Dismissed from this Case due to Misjoinder</u>

Plaintiff's Complaint improperly joined 50 unrelated individuals as Defendants. As such, John Does 2 through 50 should be severed and dismissed from the instant lawsuit pursuant to Federal Rule of Civil Procedure 21. Joinder is appropriate under the Federal Rules only if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). However, even if these parameters are met, joinder is not necessarily mandatory. The Court may order separate trials to protect any party against "embarrassment, delay, expense, or other prejudice." *See* Fed. R. Civ. 20(b). Where misjoinder occurs, the court may, on just terms, add or drop a party so long as "no substantial right will be prejudiced by severance." *AF Holdings, LLC v. Does 1-97*, No. C-11-3067-CW(DMR), slip op., 2011 WL 2912909, at *2 (N.D. Cal. July 20, 2011) (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)); Fed. R. Civ. P. 21.

**1. Plaintiff's Claims do Not Arise Out of "the Same Transaction, Occurrence, or Series of Transactions or Occurrences"**

Plaintiff would like this Court to believe that the mere use of BitTorrent protocol by the individual Defendants is sufficient to sustain their joinder in this action. However, an individual Defendant's alleged use of BitTorrent protocol does not necessitate the inference that he or she had any interaction with any of the other Defendants in this case. This Court has already held that alleged copyright infringement through the use of BitTorrent protocol is insufficient to sustain permissive joinder. *Sunlust Pictures, LLC v. Does 1-120*, No. 1:12-cv-20920-PAS, Omnibus Order [Doc. No. 26] (S.D. Fla. July 24, 2012); *Bubble Gum Productions, LLC v. Does 1-80*, No. 1:12-cv-20367-PAS, Omnibus Order [Doc. No. 40] (S.D. Fla. July 19, 2012); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fla. 2011) (severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.D.R. 669 (S.D. Fla. 2011). So have other courts in the Eleventh Circuit[1] and beyond.[2]

[1] *See, e.g.*, *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939, slip op., 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011); *Patrick Collins, Inc. v. Does 1-35*, No. 1:11-CV-02940 (N.D. Ga. Dec. 19, 2011); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-2941-CAP (N.D. Ga. Dec. 5, 2011); *cf. Patrick Collins, Inc. v. Does 1-16*, No. 6:12-cv-477-ACC-KRS, Order to Show Cause [Doc. No. 7] (M.D. Fla. Apr. 5, 2012) (plaintiff later voluntarily dismissed case).

[2] *See, e.g.*, *Malibu Media, LLC v. Does 1-54*, No. 1:12-cv-1407-WJM-MEH, Order [Doc. No. 14] (D. Colo. July 25, 2012); *In re: BitTorrent Adult Film Copyright Infringement Cases*, No. 2:11-cv-3995-DRH-GRB, 2012 WL 1570765, at *11-12 (E.D.N.Y. May 1, 2012); *Third Degree Films v. Does 1-3577*, No. C11-02768 LB, slip op.,

Specifically, in *Sunlust Pictures* this court found that "[t]he Doe Defendants' decision to obtain the BitTorrent protocol and download the same video does not in and of itself constitute the same transaction, occurrence, or series of transactions or occurrences." *Sunlust Pictures*, No. 1:12-cv-20920-PAS, Omnibus Order [Doc. No. 26] at 7. The reasoning given was that the sharing of a particular file on a person's computer via BitTorrent protocol is not a conscious decision of that person, but rather an automatic and unseen function of the BitTorrent protocol itself.

> [T]he BitTorrent protocol facilitates the transactions between users, and "[m]uch of the BitTorrent protocol operates invisibly to the user – after downloading a file, subsequent uploading takes place automatically if the user fails to close the program." *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 at *11. As such, the users themselves are not choosing to engage in file sharing with other particular users; rather, the BitTorrent protocol is determining which users to connect to in order to obtain the additional pieces of a file. Thus, the users are doing nothing more than initiating the file sharing process by obtaining the BitTorrent protocol and selecting a file for downloading. In fact, users can walk away from their computers and as long as the computer is still on, the filing [sic] sharing process continues for an indefinite period of time among an undefined number of users. Therefore, aside from downloading the same Video using BitTorrent protocol, there is nothing that connects all of the Doe Defendants to each other. *See Hard Drive Prods., Inc.*, 809 F.Supp.2d at 1163 ("The bare fact that Doe clicked on a command to participate in the BitTorrent protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world").

*Id.; Bubble Gum Productions, LLC,* No. 1:12-cv-20367-PAS, Omnibus Order at 6-7.

Many courts have evidenced this lack of connectivity between the defendants in similar cases by the large time spans between the defendants' alleged sharing of the file at issue. *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939-TWT, slip. op., 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (4+ months); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-02941-CAP, at 6 (N.D. Ga. Dec. 5, 2011) (almost 3 months); *Liberty Media Holdings*, 277 F.R.D. at 675 (2 months);

2011 WL 5374569 (N.D. Cal. Nov. 4, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, No. 2:11-CV-345, slip op., 2011 WL 4915551 (E.D. Va. Oct. 17, 2011); *K-Beech, Inc. v. Does 1-78,* No. 5:11-CV-05060 (E.D. Penn. Oct. 3, 2011).

*Liberty Media Holdings*, 277 F.R.D. at 671 (2 months); *Hard Drive Prods., Inc.*, 809 F. Supp. 2d 1150, 1163 (6 weeks); *Bubble Gum Productions, LLC*, No. 1:12-cv-20367-PAS, Omnibus Order at 7 (6 weeks); *Sunlust Pictures*, 1:12-cv-20920-PAS, Omnibus Order at 7 (1 month). Simply put, "[t]he differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert." *Raw Films*, 2011 WL 6840590, at *2; *also K-Beech, Inc.*, No. 1:11-CV-02941-CAP, at 5.

Here, Plaintiff does **not** allege that Defendants were sharing the file simultaneously. Plaintiff's evidence shows that there were large time spans between the different Defendants' alleged sharing of the file. (*See* Compl. Ex. A.) In fact, Exhibit A to the Complaint shows that each Defendant is alleged to have uploaded/downloaded the file once over a period of ALMOST SIX (6) WEEKS. (*See Id.*) This massive time span between the Defendants' alleged sharing of the file not only demonstrates that they were not acting in concert, but also the unlikelihood that any individual Doe copied or uploaded a piece from any other individual Doe. *Hard Drive Productions v. Does 1-188*, 809 F.Supp.2d 1158, 1163 (N.D. Cal. 2011) ("In this age of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole.") (quoting *Boy Racer v. Does 2-52*, No. 11-2834-LHK (PSG), [Doc. No. 12], at *6). It is no surprise that Plaintiff does not even make this allegation in its pleadings. *See Sunlust Pictures*, 1:12-cv-20920-PAS, Omnibus Order at 8; *Raw Films*, 2011 WL 6840590, at *2 ("While the Defendants may have used the same peer-to-peer system, the Complaint does not allege that they were sharing with each other").

> Under the BitTorrent Protocol, it is not necessary that each of the Does … participated in or contributed to the downloading of each other's copies of the work at issue – or even participated in or contributed to the downloading by any of the [other] Does . . . . Any "pieces" of the work copied or uploaded by any

> individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm.

*Liberty Media Holdings*, 277 F.R.D. at 675 (S.D. Fla. 2011) (quoting *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d. 1150, 1164 (N.D. Cal. Aug. 23, 2011)). In fact, Plaintiff does not even allege that all of the Defendants were participants in the same swarm of infringers. (*See* Declaration of Pavel Karaoglanov [Doc. No. 5-1] ¶ 32 ("it is my finding that each Defendant participated in **swarms** through digital handshakes by directly interacting and communicating with other members of the **swarms**") (emphasis added).)

Plaintiff's allegations that Defendants committed the same type of violation in the same way simply does not equate to participation in the same transaction, occurrence, or series of transactions or occurrences. *See LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992, at *7 (E.D.N.C. Feb. 27, 2008). This basis alone is sufficient to warrant the severance and dismissal of the John Does 2-60.

#### 2. Joinder will Result in a Lack of Judicial Economy and Prejudice the Defendants Moving Forward

"Among the factors to be considered by the court in exercising its discretion under Rule 21 are whether … judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof are required for the separate claims." *Hartley v. Clark*, No. 3:09cv559/RV/EMT, 2010 WL 1187880, at *4 (N.D. Fla. Feb. 12, 2010); *see also*, 7 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1652, at 396 (3d ed. 2001) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objective of the rule, but will result in prejudice, expense or delay").

While Plaintiff's litigation tactic of joining unrelated Defendants in this action results in substantial economic benefit to the Plaintiff, it results in an overall lack of judicial economy for the Court and Defendants.[3] In effect, Plaintiff's improper joinder tactics rob the court of the fees it requires to adjudicate such actions. In a similar case, the Northern District of Illinois recognized that:

> In addition to the procedural improprieties outlined above, the plaintiffs' tactics deny the federal courts additional revenue from filing fees in the suits that should be filed to obtain the information the plaintiffs desire. *CP Prods.*, 2011 WL 737761, at *1 ("No predicate has been shown for thus combining 300 separate actions on the cheap – if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees along would have aggregated $105,000 rather than $350.")

*Pacific Century Int'l, LTD v. Does 1-37*, No. 1:12-cv-01057 (consolidated action), 2012 WL 1072312, at *5 n.15 (N.D. Ill. Mar. 30, 2012). This was also recognized and discussed in great detail in an analogous case in the Eastern District of New York:

> In multidistrict cases considering severance of cases, courts have noted that the filing fee has:
>
> > two salutary purposes. First, it is a revenue raising measure… Second, §1914(a) acts as a threshold barrier, albeit a modest one, against the filing of frivolous or otherwise meritless lawsuits. Had each plaintiff initially instituted a separate lawsuit as should have occurred here, a fee would have been collected for each one… Thus, the federal fisc and more particularly the federal courts are being wrongfully deprived of their due. By misjoining claims, a lawyer or party need not balance the payment of the filing fee against the merits of the claim or claims.
>
> *In re Diet Drugs*, 325 F. Supp. 2d 540, 541-42 (E.D. Pa. 2004); *see also In re Seroquel Prods. Liability Litig.*, 2007 WL 737589, at *2-3 (M.D. Fla. Mar. 7, 2007) (denying reduction of filing fees, noting the burden on the court and the "gatekeeping feature of a filing fee").

---

[3] Payment of a separate filing fee for its claims against each Defendant properly balances the Plaintiff's right to protect its copyright with the Court's interest in cost-efficient adjudication of cases because, as explained below, many of the Defendants are likely to assert fact-intensive defenses that are particular to his or her individual circumstances. *Malibu Media, LLC v. Does 1-54*, No. 1:12-cv-1407-WJM-MEH, Order at 9 (S.D. Fla., July 25, 2012) [Doc. No. 14].

Several courts in similar cases involving BitTorrent protocol have also recognized the effect of a countenancing a single filing fee. One court described the "common arc of the plaintiffs' litigation tactics" in these cases:

> …these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficacy is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*Pacific Century*, 2012 WL 1072312, at *3. Thus, the plaintiffs file a single case, and pay one filing fee, to limit their expenses as against the amount of settlements they are able to negotiate. Postponing a determination on joinder in these cases "results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages plaintiffs in copyright actions to join (or misjoin) as many doe defendants as possible." *K-Beech, Inc. v. John Does 1-41*, 2012 WL 773683, at *5 (S.D. Tex. 2012).

In the four cases before this Court, plaintiffs have improperly avoided more than $25,000 in filing fees by employing its swarm joinder theory. Considering all the cases filed by just these three plaintiffs in this district, more than $100,000 in filing fees have been evaded. If the reported estimates that hundreds of thousands of such defendants have been sued nationwide, plaintiffs in similar actions may be evading millions of dollars in filing fees annually. Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen. It seems improper that they should profit without paying statutorily required fees.

*In re: BitTorrent Adult Film Copyright Infringement Cases*, 2:12-cv-3995-DRH-GRB, 2012 WL 1570765, at *13 (E.D. NY May 1, 2012).

Further, if this case proceeds, Plaintiff is likely to make further discovery requests against each individual Defendant that will further increase complexity and cost. This is the exact situation in which the Northern District of California found itself when it failed to sever the defendants in a similar case:

> [Plaintiff] would require nothing less than an inspection of the subscriber's electronically stored information and tangible things, including each of the subscriber's computer and computers of those sharing his internet network. . . . Presumably, every desktop, laptop, smartphone, and tablet in the subscriber's residence, and perhaps any residence of any neighbor, houseguest or other sharing

> his internet access, would be fair game. Beyond such an inspection, [Plaintiff] might require still more discovery, including interrogatories, document requests and even depositions.

*Boy Racer, Inc. v. Does 1-52*, No. 11-CV-2329-PSG, at 4 (N.D. Cal. Sept. 13, 2011) (order denying further discovery).

Even if no additional discovery is requested, "the variety of individualized defense that can be raised creates judicial inefficiency when numerous defendants are joined." *Sunlust Pictures*, 1:12-cv-20920-PAS, Omnibus Order at 8 (citing *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765, at *12). Such inefficiencies have been experienced by other district courts which allowed similar cases to proceed with joined defendants.

> The Magistrate Judge assigned to all BitTorrent cases has noted that defendants are coming forward with a multitude of different defenses. Some are businesses alleging that a patron was the unlawful downloader. Others are elderly grandparents that do not even know what BitTorrent is or how to download a file from the internet; they may have owned the computer associated with the unique IP address, but have no knowledge of whether someone in their household may have used the BitTorrent protocol for the purposes alleged in the complaint.

*Malibu Media, LLC v. Does 1-54*, No. 1:12-cv-1407-WJM-MEH, Order [Doc. No. 14], at 7 (D. Colo. July 25, 2012); *also BMG Music v. Does 1-203*, No. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

The courthouse circus which will likely ensue if the Defendants are not severed will result in economic prejudice to the Defendants moving forward. *See, e.g.*, *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 233 (M.D. Tenn. 2001) ("If joined in one action, hundreds of Defendants will be subject to an overwhelming onslaught of materials and information unrelated to the specific claims against them – all of which they must pay their attorneys to review"). To prevent prejudicing the Defendants and maximize judicial economy, this Court should sever and dismiss the all but the first Defendant from this case.

### B. <u>This Court Should Quash the Subpoena and/or Issue a Protective Order Preventing or Limiting the Disclosure of John Doe 6's Personally Identifying Information by Verizon</u>

Under Federal Rule of Civil Procedure 45(c)(3)(A) mandates that "the issuing court must quash or modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter, if no exception applies; or (iv) subjects a person to undue burden." A protective order may issue "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R. Civ. P. 26(c)(1).

Courts have widely accepted that individuals have an important privacy interest in their personally identifying information. *See, e.g.*, *U.S. Dept. of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 501 (1994) (characterizing the privacy interest in a home address as "nontrivial"); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) ("the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant"); *O'Kane v. United States Customs Svc.*, 169 F.3d 1308, 1309-10 (11th Cir. 1999) ("individuals have an important privacy interest in their home address"); *Sheet Metal Workers Int'l Ass'n v. U.S. Air Force*, 63 F.3d 994, 997 (10th Cir. 1995) (there is a "substantial privacy interest in personal identifying information, such as names and addresses"). Further, in passing the Cable Communications Act of 1984, Congress specifically recognized that subscribers have a privacy interest in their personally identifying information on record with their ISPs. H.R. Rep. 98-934, at *79 ("**The Congress is recognizing a right of privacy in personally identifiable information collected and held by a cable company**…") (emphasis added); *see also* 47 U.S.C. § 551(c)(2).[4]

The discovery requested through Plaintiff's Subpoena is based on the faulty assumption that the Internet subscribers identified in Exhibit A to the Complaint are the individuals who

[4] Many ISPs, including Comcast, qualify as "cable operators" as defined by 47 U.S.C. § 522(5).

actually infringed Plaintiff's copyright in the Work. However, the only individual that can be identified through an IP address is an ISP subscriber. Many courts have recognized that "the ISP subscribers to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes." *SBO Pictures, Inc. v. Does 1-3036*, No. 11-4220 SC, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011); *e.g. In re: Ingenuity 13 LLC*, No. 2:11-mc-0084-JAM-DAD, Order [Doc. No. 24], at *10 (E.D. Cal. Mar. 21, 2012) ("the identities of the subscribers associated with the identified IP addresses … would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization"); *Hard Drive Productions, Inc. v. Does 1-130*, No. C-11-3826-DMR, 2011 WL 553960, at *2 (N.D. Cal., Nov. 16 2011) ("Plaintiff concedes, in some cases the Subscriber and the Doe Defendant will not be the same individual"); *Pac. Century Int'l Ltd. v. Does 1-101*, No. C-11-02533-DMR, 2011 WL 5117424, at *2 (N.D. Cal. Oct. 27, 2011).

An IP address provides only the location at which one of any number of computer devices may be deployed, especially when used with a wireless router. The United States District Court for the Eastern District of New York noted that:

> If you only connect one computer to the Internet, that computer can use the address from your ISP. Many homes today, though, use routers to share a single Internet connection between multiple computers. Wireless routers have become especially popular in recent years, avoiding the need to run network cables between rooms. If you use a router to share an Internet connection, the router gets the IP address issued directly from the ISP. Then, it creates and manages a subnet for all the computers connected to that router.

*In re: BitTorrent Adult Film Copyright Infringement Cases*, No. 2:11-cv-3995-DRH-GRB, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012) (quoting "What is an IP address?" available at

http://computer.howstuffworks.com/internet/basics/question5492.htm). Thus, it is even less likely that an ISP subscriber (such as John Doe 17) carried out a particular computer function than that an individual who pays a home telephone bill made a specific call. It is possible that any family member living in that household, or visitor of that household, could have performed the complained of infringement. Unless the wireless router had been appropriately secured (and that security had not been compromised), neighbors or a passersby could access the Internet using the IP address assigned to a particular subscriber and download Plaintiff's film. Illustrating this fact, the court in *VPR International v. Does 1-1017*, 2:11-cv-02068-HAB-DGB (C.D. Ill. Apr. 29, 2011) cited an instance involving a raid by federal agents on a home that was linked to downloaded child pornography:

> The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple ISP subscribers' Wi-Fi connections (including a secure connection form the State University of New York).

*Id.* at 2 (citing Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/).

These circumstances create serious doubt as to Plaintiff's claim that the expedited discovery sought will produce information sufficient to identify the individuals who actually infringed upon Plaintiff's copyright. As one judge observed:

> The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; <u>**Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of the individuals who actually downloaded or shared copyrighted material.**</u>

*Digital Sin, Inc. v. Does 1-176*, --F.R.D.--, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012) (emphasis added); *also SBO Pictures*, 2011 WL 6002620, at *3. In a denying expedited discovery in a similar case, the Eastern District of California noted:

> Although the revised Hansmeier declaration clarifies that he observed the co-conspirators' IP addresses engaged in the same downloading and uploading as John Doe, the declaration still does not establish that none of the internet subscribers whose information plaintiff seeks to obtain are innocent internet users. The concern remains that potentially non-offending users' information is being sought.… Because plaintiff seeks information about the "ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, 'Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed.'" *Id.* (quoting *Hard Drive Prods.*, 2011 WL 5573960, at *2).

*First Time Videos, LLC v. Doe*, No. 2:11-cv-3478-GEB-EFB, 2012 WL 423714, at *5 (E.D. Cal. Dec. 30, 2011).

Whereas here it is uncertain, and indeed unlikely, that the Internet subscriber Defendants sought to be identified are the same individuals that downloaded Plaintiff's copyrighted Work, the Court cannot conclude with any reasonable certainty that Plaintiff has overcome Defendant's expectation of privacy in the information sought by the Subpoena. As such, the Subpoena should be quashed, or a protective order should be issued preventing Comcast from disclosing John Doe 17's personally identifying information.

## III. CONCLUSION

Plaintiff's joinder of Defendants in this case is improper because Plaintiff's claims do not arise out of the same transaction, occurrence, or series thereof, and it prejudices the Defendants while undermining judicial economy. Plaintiff seeks discovery of John Doe 17's personally identifying information on record with his ISP, to which he has a judicially and congressionally recognized privacy interest. As the discovery sought through the Subpoena will only identify an

Internet account holder rather than an actual Internet user, it would be insufficient to identify the individuals who actually infringed Plaintiff's copyright. The information sought by the Subpoena would not be used in the pending litigation in the Southern District of Florida from which the Order Granting Expedited Discovery was issued. However, Plaintiff will improperly use the discovery sought by the Subpoena in attempts to unjustly coerce excessive settlements of its claims from potentially innocent individuals through threats of the annoyance and embarrassment of being associated with graphic pornography and the undue financial burden of defending oneself in federal court.

WHEREFORE, premises considered, John Doe 17 respectfully requests that this Court:

(a) Sever and dismiss Defendants 2-50, allowing Plaintiff to bring individual actions against each Defendant, if it so chooses, in a court of the appropriate jurisdiction and venue.

(b) Quash the Subpoena pursuant to Fed. R. Civ. P. 45;

(c) Issue a protective order pursuant to Fed. R. Civ. P. 26 prohibiting the ISP Comcast from disclosing any of John Doe 17's personally identifying information;

(d) Grant such other and further relief to which John Doe 17 may justly be entitled.

Respectfully submitted,

TAMAROFF & TAMAROFF, P.A.
The Alfred I. DuPont Building
169 East Flagler Street, Suite 1633
Miami, Florida 33131
Tel: (305) 350-7440
Fax: (305) 350-7441
admin@tamarofflaw.com

By: /s/ David F. Tamaroff .
**David F. Tamaroff**
Florida Bar No. 92084
david@tamarofflaw.com
Daniel F. Tamaroff
Florida Bar No. 92083
dan@tamarofflaw.com
***Attorneys for John Doe 17***

**CERTIFICATE OF COMPLIANCE WITH Fed. R. Civ. P. 26(c)(1) and S.D. Fla. Loc. R. 7.1(a)(3)**

I have conference with counsel for the opposing party in a good faith effort to resolve the issues raised in this Motion and we were unable to agree on the resolution of the Motion.

By: /s/ David F. Tamaroff .
**DAVID F. TAMAROFF**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of August, 2012, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF and on all of those parities receiving electronic notification via the Court's CM/ECF electronic filing.

By: /s/ David F. Tamaroff .
**DAVID F. TAMAROFF**