UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 12-21489-CIV-SEITZ/SIMONTON

AEROSOFT GMBH,

    Plaintiff,

v.

JOHN DOES 1 -50,

    Defendants.
_____/

## OMNIBUS ORDER

THIS MATTER is before the Court upon John Doe's Motion to Quash Subpoena and Litigate Subpoena Anonymously [DE-10]; John Doe 38's Motion to Sever/Dismiss and for a Protective Order and/or to Quash Subpoena [DE-11]; John Doe 33's Motion to Sever/Dismiss and for a Protective Order and/or to Quash Subpoena [DE-12]; John Doe With IP Address 66.177.68.216's Motion to Dismiss and/or Quash, and/or for Protective Order, and/or for Severance from the Case [DE-13]; and John Doe 17's Motion to Sever And Dismiss Defendants John Does 2-50, Quash the Subpoena, and/or Issue a Protective Order Preventing the Disclosure of John Doe 17's Personally Identifying Information [DE-19]. Plaintiff, the owner of a copyright registration application for the video game "Airbus X" (video game) alleges that Defendants illegally reproduced and distributed the video game using the BitTorrent protocol. Plaintiff knows only the Internet Protocol address (IP address)[1] for each Defendant, which Plaintiff acquired with monitoring software. To obtain the Defendants' identities in order to serve them with process, Plaintiff received

---

[1] Plaintiff has attached a chart to its complaint identifying the fifty Doe Defendants by their individual IP addresses.

1

authorization from the Court to serve subpoenas on Internet Service Providers (ISPs), subject to a protective order. Pursuant to the protective order, the ISPs informed Defendants of this lawsuit. Defendants now seek to sever/dismiss the claims against them for misjoinder and to either quash the subpoenas served on the ISPs or for a protective order. Because the Court finds that joinder was not proper, the Motions to Sever and/or Dismiss are granted and the subpoenas issued regarding the identities of John Does 2-50 are quashed.

## I. BACKGROUND

This is a copyright infringement action. Plaintiff alleges that Defendants used the BitTorrent file sharing protocol to illegally download and distribute Plaintiff's video game. Plaintiff hired SKB UG (SKB) to use its proprietary software to detect transactions involving Plaintiff's video game, for which there is a pending copyright registration application. Plaintiff alleges that each of the Doe Defendants shared pieces of the video game, using BitTorrent, with SKB such that SKB was able to obtain enough data from the fifty Does that together the data pieces could be reassembled into a full copy of the video game.

### A. BitTorrent Protocol

BitTorrent is a modern file sharing method used for distributing data via the Internet. A BitTorrent Client is a software program that initiates the BitTorrent protocol. Unlike traditional file transfer protocols which involve a central server and the transfer of whole files between users, the BitTorrent protocol is a decentralized method of distributing data. The BitTorrent protocol breaks an individual file into small pieces that individual users then distribute among themselves. Once a user has downloaded all of the pieces, the BitTorrent Client reassembles the pieces into a whole and the user is able to view, listen, or install the copied file. This allows for faster file transfers than

traditional file-sharing programs that require users to transfer whole files from a central server among themselves.

The BitTorrent protocol operates as follows. The process begins with one user, the "seed" who makes the file available. *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672, 674 (S.D. Fla. 2011). The seed then creates a "torrent" file using the BitTorrent protocol that contains a roadmap to the IP addresses of other users who are sharing the file. *Id.* Other users, or "peers," then download the torrent file, which allows them to download from other peers who possess pieces of the file. *Id.* All of these peers are part of the same "swarm" because they are downloading pieces of the same file. *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 448 (D. Mass. 2011). After downloading a piece of the file, each user automatically becomes a source for this piece. The various members of the swarm continue to exchange pieces with one another. *Id.* Finally, "once a peer has accumulated enough individual pieces of the file, the software allows the peer to reassemble the aggregate file." *BitTorrent Swarm*, 277 F.R.D. at 674. It is this exchanging of pieces of the file that are subsequently aggregated into the whole file that facilitates faster file sharing than if each user was required to share the entire file with other users. When the BitTorrent Client divides a file into pieces, it assigns each piece a random and unique alphanumeric identifier known as "hash," which can identify the source and origin of the piece and is used to check that the piece is authentic and uncorrupted. DE-1 at ¶¶18-19.

### B. Plaintiff's Investigation to Discover Alleged Infringers

Plaintiff alleges that it retained SKB to identify the IP addresses that are being used by people using the BitTorrent protocol and the internet to reproduce, distribute, display, or perform Plaintiff's video game. SKB uses its proprietary software, Torrent Logger (SKB Logger), which appears to

others as a typical BitTorrent Client, to interact with other peers. The software then records all transactions by hash, exact time and IP number. Using the software, SKB determined that each of the fifty Does' computers were used to upload and/or download a piece of Plaintiff's video game. SKB analyzed each BitTorrent piece distributed by each IP address associated with the Defendants and verified that re-assemblage of the pieces using a BitTorrent Client results in a full copy of the video game. Thus, Plaintiff alleges that the Defendants were part of the same series of transactions.

Attached to the Complaint as Exhibit A is a chart reflecting the data gathered by SKB Logger. The chart lists the IP addresses of the Does, the date and exact time each Doe uploaded a piece of the video game, and the hash on the piece associated with each Doe. It also lists the ISP used by each Doe and the city from where Plaintiff believes the Doe accessed the internet. The chart indicates that, over the course of approximately 6 weeks, from February 27, 2012 until April 5, 2012, the various Does uploaded a piece of the video game to SKB Logger.

### C. Issuance of Subpoenas

Upon discovering the alleged infringers' IP addresses, Plaintiff sought leave to serve the ISPs with subpoenas, pursuant to Federal Rule of Civil Procedure 45, in order to obtain the identifying information for the subscribers[2] associated with the IP addresses. [DE-4]. Plaintiff sought this information in order to serve the Defendants with the summons and the Complaint. The Court granted Plaintiff's request, subject to a protective order, and subpoenas were served on the ISPs. Pursuant to the protective order, the ISPs notified the Doe Defendants of this lawsuit.

### D. Defendants' Motions

All of the motions, except John Doe's Motion to Quash Subpoena and Litigate Subpoena

---

[2] A subscriber is the person who has an agreement with the ISP to use Internet service.

Anonymously [DE-10], raise essentially the same arguments in support of severance and/or dismissal. Defendants argue that joinder of all fifty Doe Defendants is improper under Federal Rule of Civil Procedure 20(a). Plaintiff responds that these arguments are premature because the Does have not yet been named in this action or been served with process. Plaintiff further argues that because of the nature of SKB Logger, which records only uploads, all of the Does in this case were involved in the uploading of the whole video game by parts to SKB Logger and, thus, are involved in the same series of transactions. While the motions raise additional arguments in support of quashing the subpoenas or for issuance of a protective order, the Court need not discuss those issues because the joinder issue is dispositive.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 20(a)(2) describes the requirements for permissive joinder of defendants. It provides persons may be joined as defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). This rule is designed "to promote trial convenience and expedite the resolution of lawsuits, thereby eliminating unnecessary lawsuits." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). In determining whether a court will exercise its discretion to sever under Rule 20, the court should examine whether separate trials would prevent delay or prejudice. *Alexander*, 207 F.3d at 1325. Pursuant to Federal Rule of Civil Procedure 21, a court may, on motion or on its own, add or drop a party, and the court may also sever any claim against a party.

## III. DISCUSSION

Numerous courts across the country have addressed the contested issue of whether joining numerous Doe Defendants, who have used BitTorrent protocol, in a single lawsuit is proper under Rule 20(a)(2). Courts are in conflict over whether downloading and sharing/uploading a file using the BitTorrent protocol constitutes the same transaction, occurrence, or series of transactions or occurrences. Some courts have found joinder proper.[3] Other courts, however, have found misjoinder and severed all defendants except Doe One.[4] This Court recently addressed this exact issue in *Bubble Gum Productions, LLC v. Does 1-80*, Case No. 12-20367, DE-40 (July 19, 2012), and in *Sunlust Pictures, LLC v. Does 1-120*, Case No. 12-20920, DE-26 (July 24, 2012), and found that the use by multiple Does of the BitTorrent protocol to download and share the same file was not sufficient to establish proper joinder, thus, agreeing with the courts that have found misjoinder.

In *Bubble Gum* the Court explained why the defendants' decision to obtain the BitTorrent protocol and download the same video does not in and of itself constitute the same transaction, occurrence, or series of transactions or occurrences:

> This is because the BitTorrent protocol facilitates the transactions between users, and "[m]uch of the BitTorrent protocol operates invisibly to the user–after downloading a file,

---

[3]*See, e.g., K-Beech, Inc. v. Does 1-57*, 2011 WL 5597303 (Report and Recommendation), *adopted by*, 2011 WL 5597293 (M.D.Fla. 2011); *Nu Image, Inc. v. Does 1-3,932*, 2012 WL 1890854 (Report and Recommendation), *adopted by*, 2012 WL 1890829 (M.D.Fla. 2012); *Digital Sin v. Does 1-176*, 2012 WL 263491 (S.D.N.Y. Jan. 30, 2012); *Third Degree Films, Inc. v. Does 1-108*, 2012 WL 669055 (D.Md. Feb. 28, 2012); *Pacific Intern v. Does 1-31*, 2012 WL 2129003 (N.D.Ill. June 12, 2012).

[4]*See, e.g., Liberty Media Holdings v. BitTorrent Swarm*, 277 F.R.D. 669 (S.D.Fla., 2011); *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 (E.D.N.Y. May 1, 2012)(Order and Report and Recommendation); *DigiProtect USA Corp. v. Does 1-240*, 2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011); *Cinetel Films v. Does 1-1,052*, 2012 WL 1142272 (D.Md. Apr. 4, 2012); *Hard Drive Prods., Inc. v. Does 1-888*, 809 F.Supp.2d 1150 (N.D.Cal. 2011).

subsequent uploading takes place automatically if the user fails to close the program." *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765, at *11 (E.D.N.Y. May 1, 2012)(Order and Report and Recommendation). As such, the users themselves are not choosing to engage in file sharing with other particular users; rather, the BitTorrent protocol is determining which users to connect to in order to obtain the additional pieces of a file. Thus, users are doing nothing more than initiating the file sharing process by obtaining the BitTorrent protocol and selecting a file for downloading. In fact, users can walk away from their computers and as long as the computer is still on, the filing sharing process continues for an indefinite period of time among an undefined number of users. Therefore, aside from downloading the same Video using BitTorrent protocol, there is nothing that connects all of the Doe Defendants to each other. *See Hard Drive Prods., Inc.*, 809 F.Supp.2d at 1163 ("The bare fact that Doe clicked on a command to participate in the BitTorrent protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world"). This lack of connectivity is evidenced by the range of dates over which the Does in this case downloaded the Video – a period of six weeks, from December 13, 2011 until January 26, 2012. [DE 1-3]. Further, Plaintiff has not pled that any individual Doe copied or uploaded a piece from any other individual Doe. *See Hard Drive Prods., Inc.*, 809 F.Supp.2d at 1163 (finding misjoinder because "[a]ny 'pieces' of the work copied or uploaded by any individual Doe may have gone to any other Doe *or to any of the potentially thousands who participated in a given swarm*") (emphasis in original). Therefore, the Court cannot accept Plaintiff's arguments that Defendants' actions constitute the same transaction, occurrence, or series of transactions or occurrences.

In *Bubble Gum* and *Sunlust*, the Court also found that fundamental fairness and judicial economy considerations also favored severance.

Plaintiff raises two arguments in opposition to the motions to sever and/or dismiss. First, it asserts that it is premature to raise the joinder issue because "the John Does have neither been named in this action nor have any of them been served with the Complaint." The Court finds this argument specious. First, the Complaint names and makes allegations against Does 1-50. Further, in Exhibit A, Plaintiff identifies each of the Does by IP address. Thus, Plaintiff has identified each Doe. There is no indication that the Plaintiff did not intend to proceed against all fifty Does once Plaintiff obtained more specific identifying information. Consequently, contrary to Plaintiff's assertion, the Does have been named in this action and are currently Defendants in this action. Therefore, the

motions are not premature.

Plaintiff's second argument addresses the substance of joinder and attempts to differentiate this case from the circumstances in *Bubble Gum* and *Sunlust*. Plaintiff asserts that, unlike in *Bubble Gum* and *Sunlust*, here the information obtained by SKB establishes that each of the Does uploaded, or shared, a piece of the video game with SKB Logger and that the pieces obtained from the Does could be aggregated into a whole copy of the video game. Thus, Plaintiff asserts the Does were involved together in the transaction or series of transactions. This argument is deceptive in its allure.

One of the reasons people use the BitTorrent protocol to share files is because it is faster than methods that require a person to download an entire file from a single source. Thus, while it is possible that it took SKB nearly six weeks to assemble a single whole from the pieces obtained from each of the Does, it is also possible, and more likely given the fact that the Does each entered the swarm at different times and on different dates, over a period of nearly six weeks, that SKB obtained many wholes over the course of the six weeks and each of the Doe Defendants contributed a piece to one of the wholes.[5] Given the different dates and times each Doe was part of the swarm, it is possible that none of the Does contributed to the same whole or that only some of the Does contributed to any particular whole obtained by SKB Logger. Interestingly, Plaintiff does not plead that SKB Logger obtained a single copy of the whole and that each of the Does contributed a piece to that one copy; instead, it pleads that SKB "verified that re-assemblage of the pieces [obtained from the Does] using a BitTorrent Client results in a full copy of the [video game]." Simply because

---

[5] Because SKB Logger is monitoring software, the Court assumes that it differs from a normal BitTorrent Client which would stop downloading pieces once it has accumulated all of the pieces necessary to make one whole file. In other words, the Court assumes that SKB Logger continues to download pieces after it has all of the pieces necessary to make a whole file.

their pieces could be aggregated into a whole does not make the Does' uploading of the pieces part of the same transaction. Consequently, the Court finds that there is no difference between the circumstances in *Bubble Gum* and *Sunlust,* where the users of the BitTorrent protocol did not choose to engage in file sharing with other particular users, and the circumstances in this case, where none of the Does chose to engage in file sharing with other particular users or with SKB.

Further, like in *Bubble Gum* and *Sunlust*, Plaintiff does not allege that the Does acted in concert or that they shared pieces with one another. Thus, all Plaintiff can really allege is that SKB Logger entered into an individual transaction with each of the Does and when all of the transactions between SKB and the Does were complete, SKB could assemble the pieces it had received from the Does into a whole copy of the video game. To argue that the Does acted together in the same transaction involving "the data flow from Does to SKB logger" would be equivalent to arguing that all bank depositors acted together in the same transaction in the flow of money into the bank. Clearly, such a situation cannot support joinder because the Does' actions do not arise out of the same transaction, occurrence, or series of transactions or occurrences. Additionally, the same fundamental fairness and judicial economy considerations that the Court in *Bubble Gum* and *Sunlust* found favored severance are present here. Consequently, the Court finds misjoinder.

Because the Defendants were improperly joined the Court vacates the portion of its Order Granting Leave to Conduct Early Discovery [DE 9] that grants leave to conduct early discovery to obtain the subscribers' identifying information for the IP addresses associated with Does 2-50. Consequently, all subpoenas issued that seek this information are quashed.

Accordingly, it is

ORDERED that:

1. John Doe's Motion to Quash Subpoena and Litigate Subpoena Anonymously [DE-10] is GRANTED.

2. John Doe 38's Motion to Sever/Dismiss and for a Protective Order and/or to Quash Subpoena [DE-11] is GRANTED.

3. John Doe 33's Motion to Sever/Dismiss and for a Protective Order and/or to Quash Subpoena [DE-12] is GRANTED.

4. John Doe With IP Address 66.177.68.216's Motion to Dismiss and/or Quash, and/or for Protective Order, and/or for Severance from the Case [DE-13] is GRANTED.

5. John Doe 17's Motion to Sever And Dismiss Defendants John Does 2-50, Quash the Subpoena, and/or Issue a Protective Order Preventing the Disclosure of John Doe 17's Personally Identifying Information [DE-19] is GRANTED.

6. Does 2-50 are severed from this action and the claims against them are DISMISSED WITHOUT PREJUDICE.

7. The Order Granting Leave to Conduct Early Discovery [DE 9] is VACATED IN PART. Plaintiff is no longer permitted to conduct early discovery to obtain the subscribers' identifying information for the IP addresses associated with Does 2-50 and all subpoenas seeking this information are QUASHED.

8. No later than **October 31, 2012**, Plaintiff must file a notice identifying which IP address belongs to Doe Defendant One. <u>Failure to do so may result in dismissal of this case.</u>

9. Plaintiff must provide a copy of this Order to the ISPs to whom the subpoenas were issued no later than **October 31, 2012** and file a notice of compliance in this Court by **November 6, 2012**.

DONE AND ORDERED in Miami, Florida, this 23rd day of October, 2012.

*Patricia A. Seitz*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record